# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* D. R. WOLF, Minor.

UNPUBLISHED
November 20, 2018

No. 343001
Grand Traverse Circuit Court
Family Division
LC No. 16-004241-NA

Before: MURPHY, P.J., and O'CONNELL and BECKERING, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court's order terminating his parental rights to the minor child pursuant to MCL 712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist), (c)(*ii*) (other conditions implicating the court's jurisdiction arose and were not rectified), (g) (failure to provide proper care or custody) and (j) (reasonable likelihood of harm to the child if returned to parent's care).[1]  We affirm.

This case involves the termination of respondent's parental rights to an Indian child, thereby implicating the federal Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq.*, the Michigan Indian Family Preservation Act (MIFPA), MCL 712B.1 *et seq.*, and MCR 3.977(G). Respondent first argues that the trial court erred when it found that "active efforts" were made by petitioner to prevent the breakup of respondent and the child.  We disagree.

When an Indian child is the subject of a protective proceeding and termination of parental rights is sought, petitioner is required to demonstrate that active efforts were made to provide remedial services and rehabilitative programs that were designed to prevent the breakup of an Indian family and that those efforts proved unsuccessful.  25 USC 1912(d); MCL 712B.15(3); MCR 3.977(G)(1).  Active efforts, regardless of which state or federal provision is being examined, must be proven by clear and convincing evidence.  *In re Beers/Lebeau-Beers Minors*, __ Mich App __, __; __ NW2d __ (2018); slip op at 5.  "The factual findings by the trial court are reviewed for clear error, with any issue regarding the interpretation and application of the relevant federal and state statutory provisions being reviewed de novo."  *Id.* at __; slip op at 13-14.  In addition to the "active efforts" requirement, the termination of parental rights to an Indian

---

[1] The child's mother voluntarily released her parental rights.  She is not a party to this appeal.

child cannot be ordered absent a determination that the continued custody of the child is likely to result in serious physical or emotional damage to the Indian child. 25 USC 1912(f); MCL 712B.15(4); MCR 3.977(G)(2); *Beers/Lebeau-Beers Minors*, __ Mich App at __; slip op at 3 and 5. This evidentiary burden must be proven beyond a reasonable doubt, requiring the testimony of at least one qualified expert witness. 25 USC 1912(f); MCL 712B.15(4); MCR 3.977(G)(2); *Beers/Lebeau-Beers Minors*, __ Mich App at __; slip op at 3 and 5.[2] The requirements of ICWA, MIFPA, and MCR 3.977(G) are in addition to the mandate that petitioner establish a statutory ground for termination under MCL 712A.19b(3) by clear and convincing evidence. *Beers/Lebeau-Beers Minors*, __ Mich App at __; slip op at 5 and 6.

In regard to "active efforts," this Court in *Beers/Lebeau-Beers Minors*, *id.* at __; slip op at 14, observed:

> [A]ctive efforts are defined as actions to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and to reunify the Indian child with the Indian family. Active efforts require affirmative, as opposed to passive, efforts, and active efforts require more than the standard reasonable-efforts approach. Active efforts require more than a referral to a service without actively engaging the Indian child and family. Active efforts entail a caseworker taking a client through the steps of a treatment plan rather than requiring the client to perform the plan on his or her own. [Citations and quotation marks omitted.]

MCL 712B.3(a)(*i*) to (*xii*) and MCR 3.002(1)(a) to (*l*) provide an extensive list of actions or steps that must be completed or addressed in order to satisfy the "active efforts" requirement. See *Beers/Lebeau-Beers Minors*, __ Mich App at __; slip op at 5 and 13.

Contrary to respondent's claim, the trial court did not clearly err when it found that petitioner had made active efforts to prevent the breakup of the Indian family. The assigned caseworker did not simply provide referrals and require respondent, or the child's mother, to act without the caseworker's assistance. Early in the proceeding, the caseworker attempted to help respondent find housing and employment, provided transportation assistance, helped respondent and the child enroll in the Sault Ste. Marie Tribe of Chippewa Indians, and supplied infant care items for the child. The caseworker made referrals to Community Mental Health (CMH) and actively sought to involve respondent in therapy, even after his incarceration and his initial rejection of services. When respondent was in jail and other services were unavailable, the caseworker provided respondent with self-study parenting class materials. And when respondent requested tribal services, such as tribal housing or tribal behavioral health services, the caseworker assisted him in obtaining them, even though she could not directly procure them

---

[2] Respondent conflates this burden of proof with the burden applicable to the "active efforts" requirement, which, as noted above, is the clear-and-convincing evidence standard. Thus, contrary to respondent's argument, petitioner was not required to prove beyond a reasonable doubt that active efforts were undertaken.

herself. She also assisted respondent in obtaining new identification documentation when he was in Alternative Directions. Although respondent faults the caseworker for failing to provide more direct services to him while he was in Alternative Directions, the caseworker explained that respondent technically remained incarcerated throughout this period, yet she continued to work with his case manager at Alternative Directions to provide him with assistance. Also, when respondent showed interest in becoming more involved in his Indian heritage and in having the child exposed to beliefs associated with that heritage, the caseworker sought out information to provide age-appropriate activities and involvement for the child, such as a smudging ceremony and attendance at Pow Wows.

Moreover, tribal expert Heidi Cotey testified that she was involved in working with petitioner in formulating strategies throughout the proceedings, and she consulted with the Sault Ste. Marie Tribe's Child Welfare Committee about this case. At the termination hearing, she described the tribe's definition of active efforts and in particular the tribe's position that culturally appropriate services were those that assisted in removing the barriers to reunification and did not necessarily have to incorporate Native American identity or teachings. She outlined her reasons why she thought that petitioner met its responsibility to engage in active efforts in the case. She concluded that petitioner had used all family preservation strategies, and she did not know of any others that could have been offered to the family. She further stated that returning the child to respondent's custody would result in serious emotional or physical damage to him because respondent continued to have significant barriers to reunification that would put the child at risk. Given this testimony, the trial court did not clearly err when it found that active efforts had been made, that respondent refused to participate in most of the services, and that further efforts were not likely to result in reunification.

Respondent next argues that the trial court clearly erred in finding that statutory grounds for termination were established pursuant to MCL 712A.19b(3)(c) and in finding that termination was in the child's best interests. If a trial court finds that a single statutory ground for termination has been established by clear and convincing evidence and that it has been proved by a preponderance of the evidence that termination of parental rights is in the best interests of a child, the court is mandated to terminate a respondent's parental rights to that child. MCL 712A.19b(3) and (5); *In re Beck*, 488 Mich 6, 10-11; 793 NW2d 562 (2010); *In re Moss,* 301 Mich App 76, 90; 836 NW2d 182 (2013); *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). "This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the children's best interests." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011); see also MCR 3.977(K). "A finding . . . is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed[.]" *In re BZ*, 264 Mich App 286, 296; 690 NW2d 505 (2004). In applying the clear error standard in parental termination cases, "regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989). The trial court must "state on the record or in writing its findings of fact and conclusions of law[,] [and] [b]rief, definite, and pertinent findings and conclusions on contested matters are sufficient." MCR 3.977(I)(1).

Although the trial court found that statutory grounds for termination were established under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j), respondent only challenges the trial court's

findings regarding § 19b(3)(c)(*i*) and (c)(*ii*). "When an appellant fails to dispute the basis of a lower court's ruling, we need not even consider granting the relief being sought by the appellant." *Denhof v Challa*, 311 Mich App 499, 521; 876 NW2d 266 (2015). Therefore, considering that only a single ground for termination is sufficient, there is no need to go any further concerning the statutory grounds for termination. Nevertheless, we will examine the statutory grounds.

Respondent's argument essentially consists of a restatement of his position that petitioner did not make active efforts at reunification, which we have already rejected. MCL 712A.19b(3)(c)(*i*) and (c)(*ii*) authorize termination of parental rights under the following circumstances:

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

(*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

As applicable to respondent, the conditions that led to the adjudication were that respondent was unemployed and lacked housing, did not have the means to take care of the child, had been diagnosed with bipolar disorder, had used marijuana, and would benefit from counseling and parenting skills assistance. The testimony of the caseworker and respondent supports the trial court's finding that respondent made virtually no progress in any of these areas. Respondent admitted that he remained homeless and unemployed, and had applied for only a few jobs. He maintained that he attended substance abuse services through his tribe, but admitted that he did not furnish the caseworker with any documentation. He did not have a driver's license, a vehicle, or a telephone. He had spoken with his therapist about attending anger management classes, but he was not enrolled. He was attending counseling, but he had not spoken to a psychiatrist and was not taking any medications. He acknowledged that, "for spiritual purposes," he was not planning on abstaining from marijuana, which he did not regard as a drug. The caseworker stated that respondent had completed only a portion of the self-study parenting class materials.

With respect to § 19b(3)(c)(*ii*), respondent was incarcerated due to a domestic violence incident in November 2016 involving the child's mother as the victim.[3] Yet by the time of the termination hearing, respondent still had not successfully completed anger management classes. In addition, the caseworker testified that respondent had repeatedly violated a no-contact order relative to the child's mother while he was at Alternative Directions. The trial court did not clearly err when it found that this condition had not been rectified.

In addition, given respondent's lack of progress, his past refusal to participate in services, and the length of time that the child had remained in care, the trial court did not clearly err by finding that there was no reasonable likelihood that respondent would be able to rectify these conditions within a reasonable period of time. And we defer to the trial court's rejection of respondent's testimony to the contrary, as that was a credibility assessment. *Miller*, 433 Mich at 337

Although respondent does not specifically challenge the trial court's findings concerning § 19b(3)(g) and (j), the court did not clearly err with respect to its determination that these grounds had also been proven by clear and convincing evidence. "A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014). "Similarly, a parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *Id*. at 711.

With respect to respondent's argument that the trial court erred in determining that termination was in the child's best interests, we place our focus on the child rather than the parent. *In re Moss*, 301 Mich App at 87.[4] In assessing a child's best interests, a trial court may

---

[3] The child's mother testified that respondent hit her more than a couple of times, slammed her head into the floor, and threw her against a door. She was hospitalized for her injuries. Respondent testified that he had no recollection of the assault because he had been drinking. Respondent's bond in the matter was revoked after a Facebook post on his account effectively threatened the life of one of the arresting officers.

[4] Respondent, quoting *In re Trejo Minors*, 462 Mich 341, 354; 612 NW2d 407 (2000), and citing MCL 712A.19b(5), contends that "[o]nce a ground for termination is established, the court must issue an order terminating parental rights unless there exists clear evidence, on the whole record, that termination is not in the child's best interests." He further maintains "that there exists clear evidence, on the whole record, that termination is *not* in the child's best interests[.]" The standard cited by respondent no longer applies, given that pursuant to 2008 PA 199, the Legislature amended MCL 712A.19b(5) to now provide that trial courts must find, in addition to a statutory ground for termination, "that termination of parental rights is in the child's best interests." This change was enacted *ten years ago*! And we are deeply troubled by the number of attorneys assigned to represent indigent parents in termination appeals who are uninformed regarding such a basic tenet of parental-termination law.

consider such factors as a "child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *White*, 303 Mich App at 714. A court may also consider whether it is likely "that the child could be returned to her parents' home within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012).

In determining that termination of respondent's parental rights was in the child's best interests, the court relied on respondent's history of domestic violence, his untreated mental health issues, his substance abuse, and his lack of progress in resolving his other barriers to reunification. The court also noted that respondent had not had visitation with the child for most of the child's life due to respondent's incarceration. The court found that the child was not bonded with respondent, but had instead bonded with his foster parents. The trial court also noted that respondent had acknowledged that he could not presently care for the child and that the child's placement in the pre-adoptive home was meeting his needs.

At the time of the termination hearing, respondent remained homeless, unemployed, and unable to care for the child's physical needs. He had decided not to address his substance abuse issues and had made minimal progress toward addressing his mental health needs. In contrast, the child's foster mother testified about the child's special medical needs and her efforts in caring for him, both physically and emotionally. She stated that the child was thriving in her care and was very attached and affectionate toward her, her husband, and their children. She also testified about how she and her husband were incorporating the child's Indian heritage into his upbringing. Cotey agreed that returning the child to respondent's custody would result in serious emotional or physical damage to him because respondent continued to have significant barriers to reunification that would put the child at risk.[5] She also thought that termination of respondent's parental rights would be in the child's best interests and that the tribe's Child Welfare Committee also supported termination. In sum, there was no clear error relative to the

---

[5] As noted earlier, respondent confuses the burden of proof applicable to the "active efforts" requirement, mistakenly citing the beyond-a-reasonable-doubt standard, which pertains to the rule that termination of parental rights to an Indian child cannot be ordered absent testimony by a qualified expert and a determination that the continued custody of the child is likely to result in serious physical or emotional damage to the Indian child. 25 USC 1912(f); MCL 712B.15(4); MCR 3.977(G)(2); *Beers/Lebeau-Beers Minors*, __ Mich App at __; slip op at 3 and 5. Even though respondent does not appear to be making an argument under the serious-damage provision, this panel, exercising an over-abundance of caution, concludes that the evidence cited throughout this opinion in favor of termination, including the testimony of Indian expert Cotey, showed beyond a reasonable doubt that custody of the child by respondent would likely result in serious physical or emotional damage to the child.

trial court's finding that termination of respondent's parental rights was in the child's best interests.

Affirmed.

/s/ William B. Murphy
/s/ Peter D. O'Connell
/s/ Jane M. Beckering